UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AMOS C. JOHNSON, M.D., Individually and as Trustee of the Johnson Family Trust, and THE JOHNSON FAMILY TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>RITA E. JOHNSON, Individually and as Personal Representative of the Estate of Marjorie Johnson,<br><br>    Defendants. | Case No. 24-cv-11673<br><br>Honorable Robert J. White |

**OPINION AND ORDER DISMISSING THE COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

I.    <u>Introduction</u>

Amos C. Johnson, M.D. and the Johnson Family Trust ("Dr. Johnson," collectively) commenced this action against Rita Johnson, individually and in her capacity as personal representative of her mother's estate. The complaint seeks to compel Rita Johnson to arbitrate the disputed ownership of certain estate assets pursuant to the Federal Arbitration Act.

Before the Court is Dr. Johnson's response to a September 9, 2024, show cause order directing him to explain why the complaint should not be dismissed for lack

of subject-matter jurisdiction. (ECF Nos. 7-8). Rita Johnson filed a supplemental brief on this same question at the Court's direction. (ECF Nos. 9, 11). Dr. Johnson replied to the supplemental brief. (ECF No. 12). Also before the Court is Dr. Johnson's motion for judgment on the pleadings. (ECF No. 6). The Court will address the show cause order and decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1) the complaint is dismissed for lack of subject-matter jurisdiction, and (2) Dr. Johnson's motion for judgment on the pleadings is denied as moot.

II.  Background

Dr. Johnson and Rita Johnson are siblings. (ECF No. 1-2, PageID.18). Their parents, Amos G. Johnson and Marjorie Johnson, created the Johnson Family Trust in May 2000 as a revocable trust. (ECF No. 1-1, PageID.3-4, ¶¶ 3-4). They intended the Trust to receive "all their assets" and "to be named beneficiary" of all their current and future property interests. (ECF No. 1-2, PageID.21). The Trust names Dr. Johnson as the first successor trustee in the event of his parents' death. (*Id.*, PageID.24). The Trust names Rita Johnson as the second successor trustee in the event of Dr. Johnson's death. (*Id.*). Both Dr. Johnson and Rita Johnson are the Trust's primary beneficiaries. (*Id.*, PageID.18). The Johnson parents are the only parties to the Trust. (*Id.*). They are also the only signatories. (*Id.*, PageID.63).

2

Among other things, the trust document contains an arbitration clause that reads:

> **Notice of Arbitration**
>
> The Trustors and Trustees of this Trust have agreed that alternative dispute resolution should be utilized to preserve the total Trust Estate from the expenses of legal fees and litigation. For that reason, <u>THIS TRUST IS SUBJECT TO ARBITRATION</u>. The Trustee shall submit all disputes to arbitration as provided in this Trust and arbitration awards shall be fully enforceable under the terms of state law and common law to the extent they are not inconsistent.

(*Id.*, PageID.18).

Amos G. Johnson died on June 8, 2007. (ECF No. 1-1, PageID.7, ¶ 19). Marjorie Johnson died on May 21, 2020. (*Id.*, PageID.7, ¶ 20). Dr. Johnson alleges that his mother's will contains a "pour over" clause directing that all her estate assets be transferred to the Trust upon her death.[1] (*Id.*, PageID.6-7, ¶ 18; ECF No. 6-8, PageID.229). According to him, the Trust currently owns all the assets formerly in his mother's estate by operation of her will.

Rita Johnson contests this interpretation. On May 11, 2021, she commenced a proceeding to probate her mother's estate in Wayne County Probate Court. (*In re Estate of Marjorie Shea Johnson*, Wayne County Probate Court, Case No. 2021-865116-DA, Dkt. Information, Dkt. Entry 5/11/2021). The probate court formally

---

[1] The copy of the will attached to Dr. Johnson's motion for judgment on the pleadings is unexecuted. (ECF No. 6-8).

appointed her as the Estate's personal representative on August 27, 2021. (*Id.*, Dkt. Entry 8/27/2021). Dr. Johnson contested whether the assets designated in the Estate's inventory actually belong to the Trust. (ECF No. 1-1, PageID.8-9, ¶¶ 28-30; ECF No. 1-6, PageID.77-82). He moved to compel arbitration of the dispute pursuant to the trust document's arbitration clause. (*In re Estate of Marjorie Shea Johnson*, Wayne County Probate Court, Case No. 2021-865116-DA, Dkt. Information, Dkt. Entry 9/17/2021). The state probate court denied the motion. (*Id.*, Dkt. Entry 2/02/2022; ECF No. 1-1, PageID.10, ¶ 37).

Dr. Johnson filed this lawsuit in response, invoking both federal question and diversity jurisdiction. (ECF No. 1-1, PageID.4, ¶ 7). The complaint seeks to (1) compel the Estate to arbitration under the Federal Arbitration Act, and (2) stay the state probate court case pending the arbitration's resolution.[2] (*Id.*, PageID.12-15, ¶¶ 46-57). Dr. Johnson also moved for judgment on the pleadings. (ECF No. 6).

---

[2] *Res judicata* most likely precludes this litigation because of the Wayne County Probate Court's earlier denial of the motion to compel arbitration. But since that doctrine is an affirmative defense rather than a jurisdictional hurdle, the Court cannot, on its own, address whether *res judicata* is appropriate. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 582 (6th Cir. 2009) ("Fed. R. Civ. P. 8(c) clearly frames *res judicata* as an affirmative defense, which means that it can be waived and that it does not go to subject-matter jurisdiction."); Fed. R. Civ. P. 8(c)(1). Nor are there any "special circumstances" present that would justify the assertion of *res judicata sua sponte*. *See Neff v. Flagstar Bank, FSB*, 520 F. App'x 323, 327 (6th Cir. 2013) (holding that "special circumstances" exist when "a court is on notice that it has previously decided the issue presented" or where changed circumstances render the defense applicable when it was otherwise unavailable).

4

In an order dated September 9, 2024, the Court directed Dr. Johnson to show cause as to why the complaint should not be dismissed for lack of subject matter jurisdiction. (ECF No. 7). The order instructed Dr. Johnson to specifically address whether federal diversity jurisdiction is lacking because of (1) the probate exception, (2) the prior-exclusive-jurisdiction doctrine, or because (3) the parties are not citizens of different states. (*Id.*, PageID.240). The order also stayed the response time to the motion for judgment on the pleadings. (*Id.*).

After receiving Dr. Johnson's response to the September 9 show cause order, the Court directed Rita Johnson to address the same jurisdictional issues in a supplemental brief. (ECF No. 8; ECF No. 9, PageID.293). Dr. Johnson filed a reply. (ECF Nos. 11-12). Upon reviewing the parties' submissions, the Court concludes that it lacks the requisite subject-matter jurisdiction to decide this case.

III.  Legal Standards

"[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). While neither party raised the issue, subject-matter jurisdiction "cannot be waived or be overcome by an agreement of the parties." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934); *see also Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804) ("[I]t [is] the duty of the Court to see that they had jurisdiction, for the consent of the

parties could not give it."). Regardless how far along the proceedings advance, "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

IV. Analysis

    A. *Federal Subject-Matter Jurisdiction and the Federal Arbitration Act*

Dr. Johnson first looks to the Federal Arbitration Act ("FAA") as the basis for invoking federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1-1, PageID.4, ¶ 7). This jurisdictional theory is entirely unfounded. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that the FAA "does not provide federal courts with an independent basis for subject matter jurisdiction." *Bay Shore Power Co. v. Oxbow Energy Sols., LLC*, 969 F.3d 660, 664 (6th Cir. 2020); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (remarking that the FAA "does not create any independent federal-question jurisdiction under 28 U. S. C. § 1331 or otherwise.").

The Supreme Court gleaned this interpretation initially from a plain reading of the FAA's text. *See Hall St. Assocs.*, 552 U.S. at 582; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n.32. 9 U.S.C. § 4 authorizes the party seeking to enforce a "a written agreement for arbitration" to "petition any United States district court which, *save for such agreement, would have jurisdiction under Title 28 . . . of the*

*subject matter of a suit arising out of the controversy between the parties*." (Emphasis added). This language references Chapter 85 to Title 28 of the United States Code, which delineates a federal district court's jurisdictional parameters. *See BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 n.11 (6th Cir. 2005) (noting that Chapter 85 "contain[s] the jurisdictional grants to the district courts."); *see also Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006) ("Chapter 85 of Title 28 is devoted to the subject matter jurisdiction of district courts"). And it requires federal courts to "look through a § 4 petition and order arbitration if, save for the arbitration agreement, the court would have jurisdiction over the substantive controversy between the parties." *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009) (cleaned up); *see also New Heights Farm I, LLC v. Great Am. Ins. Co.*, No. 24-1087, 2024 U.S. App. LEXIS 25851, at *12 (6th Cir. Oct.15, 2024) (same).

Dr. Johnson disagrees. He points to three federal cases suggesting the opposite is true, *i.e.*, that the FAA *is* an independent source of federal-subject matter jurisdiction. Those authorities are unpersuasive. Although all three cases reference a district court's "subject-matter" jurisdiction under section 3 to the FAA, not one of them relied upon the FAA as the *exclusive* source of the court's federal subject-matter jurisdiction. (ECF No. 8, PageID.248). For example, in *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1375 (6th Cir. 1995) and *J.P. Morgan Sec., LLC v. Duncan*, No. 22-11732, ECF No. 1, PageID.7, ¶ 16 (E.D. Mich.

7

Jul. 26, 2022) the courts' subject-matter jurisdiction rested on the parties' diverse citizenship. *See* 28 U.S.C. § 1332. And in *Amyotrophic Lateral Sclerosis Ass'n v. Amyotrophic Lateral Sclerosis of Mich., Inc.*, No. 05-73464, 2006 U.S. Dist. LEXIS 64323, at *10 (E.D. Mich. Sep. 8, 2006) it depended on the presence of a federal question. *See* 28 U.S.C. § 1331.

Another problem is one of precedential integrity. Insofar as these cases may be read to conflict with the Supreme Court's subsequent decision in *Hall St. Assocs.* – which held that the FAA does not confer federal subject-matter jurisdiction – they are no longer binding, or even persuasive, because they cannot abrogate contrary Supreme Court authority. *See United Steelworkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 424 (6th Cir. 2007) (en banc) (overruling circuit precedent that conflicted with later Supreme Court decisions). The FAA, therefore, cannot alone provide the jurisdictional foundation for entertaining this litigation.

B.   *The Probate Exception to Federal Diversity Jurisdiction*

Dr. Johnson raises the parties' diverse citizenship as an alternative basis for federal subject-matter jurisdiction. (ECF No. 1-1, PageID.4, ¶ 7). 28 U.S.C. § 1332(a)(1). In his view, diversity jurisdiction is appropriate because Rita Johnson is a California citizen while he is a citizen of Michigan. (ECF No. 8, PageID.249-54). Their ongoing dispute in state probate court, though, undercuts this position.

The Supreme Court has long recognized a "probate exception" to "otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006) (collecting cases). The exception deprives federal courts of subject-matter jurisdiction when they are asked to "to probate a will or administer an estate," "interfere with the probate proceedings," "assume general jurisdiction of the probate," or assume "control of the property in the custody of the state court." *Id.* at 310 (quotation omitted).

The Sixth Circuit Court of Appeals interprets these categories narrowly. It limits the probate exception to three scenarios: (1) where the plaintiff seeks to probate a will; (2) where the plaintiff seeks to annul a will; or (3) where the plaintiff seeks to reach a *res* within the state probate court's custody. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (cleaned up); *see also Wisecarver v. Moore*, 489 F.3d 747, 750 (6th Cir. 2007). "[T]he probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property at the time that the plaintiff files her complaint in federal court." *Chevalier*, 803 F.3d at 804.

This litigation is not geared towards probating or annulling a will or administering an estate. Rather, Dr. Johnson urges the Court to stay the state probate court proceeding and "order the disposition of [the] assets" already subject to that proceeding "to binding arbitration." (ECF No. 1-1, PageID.15, ¶ 57). The only

pertinent question is whether Dr. Johnson's request falls within the probate exception's third contingency, *i.e.*, where the plaintiff seeks to reach the *res* over which the state probate court has custody. *Chevalier*, 803 F.3d at 801.

To answer this inquiry federal courts must first ascertain whether the asserted claims are *in personam* or *in rem* actions. *Id.* *In personam* actions are "action[s] brought against a person rather than property," where the judgment "is binding on the judgment-debtor and can be enforced against all the property of the judgment-debtor." *Id.* at 801-02 (citation omitted). *In rem* actions are "action[s] determining the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property," or "action[s] in which the named defendant is real or personal property." *Id.* at 802 (citation omitted). *In rem* actions are basically contests "over a property or a person in the court's control." *Id.* (citation omitted). The property within the court's custody or control is the *res*. *Id.* (citation omitted).

Property falls within in the probate court's custody once a court-appointed personal representative or administrator takes possession of the property on behalf of the decedent's estate. *See Byers v. McAuley*, 149 U.S. 608, 615 (1893) ("An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. *It is the possession of the court*, and it is a possession which cannot be disturbed by

10

any other court.") (emphasis added); *Yonley v. Lavender*, 88 U.S. (21 Wall.) 276, 280 (1874) (holding that the appointment of an administrator placed the estate's property "in the custody of the Probate Court, of which the administrator was an officer, and during the progress of administration was not subject to seizure and sale by any one."); *Spears v. Spears*, 162 F.2d 345, 349 (6th Cir. 1947) (holding that once "a special administrator has been appointed to conserve the [decedent's] estate . . . this fiduciary's possession is the possession of the court."); *Hudson v. Saginaw Circuit Judge*, 114 Mich. 116, 117 (1897) (stating that "[w]hen property or money is *in custodia legis*, the officer holding it is the mere hand of the court. His possession is the possession of the court. To interfere with his possession is to invade the jurisdiction of the court itself.").

Under Michigan law, personal representatives take "title to estate property that an absolute owner would have, in trust . . . for the benefit of creditors or others interested in the estate." Mich Comp. Laws § 700.3711. They assume this power upon the probate court's appointment. Mich. Comp. § 700.3701.

Here, (1) the state probate court appointed Rita Johnson as the Estate's personal representative on August 27, 2021, (2) she took title to the Estate's property upon her appointment, (3) the probate court assumed custody of the Estate's property at this same juncture, (4) the Estate's property is now the *res*, and (5) Dr. Johnson disputes the Estate's claim of title to the assets forming part of that *res*. (ECF No. 1-

11

1, PageID.8-9, ¶¶ 28-30; *see In re Estate of Marjorie Shea Johnson*, Wayne County Probate Court, Case No. 2021-865116-DA, Dkt. Information, Dkt. Entry 8/27/2021). *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (taking judicial notice of state court docket entries). These factors all indicate that Dr. Johnson's claims are *in rem* in nature.

Having reached this determination, the second question is whether Dr. Johnson is asking the Court to "elbow its way into an ongoing fight over a property or a person in another court's control." *Chevalier*, 803 F.3d at 802 (cleaned up).

The complaint seeks (1) a stay of the state probate court proceeding "concerning or involving" assets that form part of the *res*, and (2) an order compelling "the disposition of those assets to binding arbitration." (ECF No. 1-1, PageID.15, ¶ 57). But awarding such relief would interfere with the state probate court's custody over the disputed assets as it would place them at the disposal of the arbitral body charged with adjudicating the dispute. Since the Court cannot accomplish this result without encroaching upon the state probate court's custody over the *res*, the probate exception to federal diversity jurisdiction bars further consideration of this case. *See Marshall*, 547 U.S. at 311-12 (holding that the probate exception "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.").

Dr. Johnson views things differently. He seems to argue that the disputed assets cannot form part of the *res* because they never belonged to the Estate in the first place. As a result, they cannot possibly fall within the state probate court's custody. (ECF No. 8, PageID.255-56). This contention overlooks the probate exception's core focus.

Application of the probate exception "turns on whether the state court has 'custody' or 'control' of the property – not whether the estate has good title to it." *Architectural Body Research Found. v. Reversible Destiny Found., Inc.*, 335 F. Supp. 3d 621, 638 (S.D.N.Y. 2018). So "there is no exception to the probate exception that permits *in rem* actions against an estate so long as the property is allegedly improperly in the hands of the estate." *Carpenters' Pension Tr. Fund-Detroit & Vicinity v. Century Truss Co.*, No. 14-11535, 2015 U.S. Dist. LEXIS 39106, at *14 (E.D. Mich. Mar. 27, 2015). The "provenance of the property constituting the corpus of the *res*" is immaterial to the analysis. *Id.* at *15 (italics added); *see also Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 107 (2d Cir. 2007).

Because ordering "the disposition" of the disputed assets "to binding arbitration" would necessarily intrude upon the state probate court's custody over the *res*, the probate exception to federal diversity jurisdiction precludes the Court from entertaining this matter. (ECF No. 1-1, PageID.15, ¶ 57).

### C. Prior-Exclusive-Jurisdiction Doctrine

Closely related to the probate exception is the prior-exclusive-jurisdiction doctrine. Under that doctrine, "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion" of another subsequent tribunal. *Chevalier*, 803 F.3d at 803 (quoting *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939)); *see also Cartwright v. Garner*, 751 F.3d 752, 761 (6th Cir. 2014). The doctrine "applies to a federal court's jurisdiction over property only if a state court has previously exercised jurisdiction over that same property and retains that jurisdiction in a separate, concurrent proceeding." *Sexton v. NDEX W., LLC*, 713 F.3d 533, 537 (9th Cir. 2013).

The Sixth Circuit has observed that "[t]he prior-exclusive-jurisdiction doctrine is similar – if not identical to – the probate exception." *Chevalier*, 803 F.3d at 803. And like the probate exception, the doctrine "applies at the time of filing, and not at any time thereafter." *Id.* Because the Court has already decided that granting the requested relief would meddle in the state probate court's custody over the *res*, there is no principled reason why that same conclusion does not equally trigger the prior-exclusive-jurisdiction doctrine. The Court, therefore, lacks subject-matter jurisdiction on this ground as well.[3] *Cartwright*, 751 F.3d at 759 (stating that

---

[3] Although it directed the parties to address whether their citizenship is completely diverse for jurisdictional purposes, the Court declines to reach this question. *See* 28

the prior-exclusive-jurisdiction doctrine deprives federal courts of subject-matter jurisdiction). Accordingly,

IT IS ORDERED that the complaint (ECF No. 1) is dismissed for lack of subject-matter jurisdiction.

IT IS FURTHER ORDERED that Dr. Johnson's motion for judgment on the pleadings (ECF No. 6) is denied as moot.

Dated: November 8, 2024                s/Robert J. White
                                       Robert J. White
                                       United States District Judge

---

U.S.C. § 1332; *see also Evanston Ins. Co. v. Hous. Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017) ("A federal court has [diversity] jurisdiction only if complete diversity exists"). The probate exception and the prior-exclusive-jurisdiction doctrine would bar the exercise of federal diversity jurisdiction even if the parties are, in fact, completely diverse.

15